Slip Op. 18 - 48

U.S. STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| DURUM GIDA SANYI VE TICARET A.S., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | PUBLIC VERSION <br><br> Before: Leo M. Gordon, Judge <br><br> Court No. 16-00266 |

**OPINION**

[Commerce's <u>Rescission</u> of new shipper review sustained.]

Dated: April 24, 2018

<u>Mark B. Lehnardt</u>, Baker & Hostetler, LP, of Washington, DC, argued for the Plaintiff Durum Gida Sanyi Ve Ticaret A.Ş.

<u>Elizabeth A. Speck</u>, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for Defendant United States. With her on the brief were <u>Chad A. Readler</u>, Acting Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Claudia Burke</u>, Assistant Director. Of counsel were <u>Lydia C. Pardini</u>, on the brief, and <u>Natan P.L. Tubman</u>, Attorneys, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

<u>Joshua R. Morey</u>, Kelley Drye & Warren, LLP, of Washington, DC, argued for Defendant-Intervenors American Italian Pasta Company, New World Pasta Company, and Dakota Growers Pasta Company. With him on the brief were <u>Paul C. Rosenthal</u> and <u>David C. Smith</u>.

Gordon, Judge: This action involves the final determination of the U.S. Department of Commerce ("Commerce") rescinding the new shipper review ("NSR") of Plaintiff Durum Gida Sanyi Ve Ticaret A.Ş ("Plaintiff" or "Durum") for the period of July 1, 2014 to June 30,

2015. See Certain Pasta from Turkey, 81 Fed. Reg. 86,701 (Dep't of Commerce Dec. 1, 2016) (final rescission of new shipper review) ("Rescission"), and the accompanying Issues and Decision Memorandum, A-489-805 (Nov. 25, 2016), available at https://enforcement.trade.gov/frn/summary/turkey/2016-28856-1.pdf ("Decision Memorandum") (last visited this date); see also Confidential Joint Appendix, ECF No. 38, Tab 13, CD 166[1] (Memorandum from Fred Baker through Erin Kearney to Scot Fullerton, Re: Certain Pasta from the Republic of Turkey: Final Rescission of New Shipper Review, A-489-805 (Nov. 25, 2016)) ("Confidential Decision Memorandum"). Before the court is Plaintiff's USCIT Rule 56.2 motion for judgment on the agency record. See Pl.'s Rule 56.2 Mot. J. Agency R., ECF No. 27 ("Pl.'s Br."); see also Def.'s Resp. to Pl.'s Rule 56.2 Mot. for J. on the Agency R., ECF No. 28 ("Def.'s Resp."); Def.-Intervenors' Resp. in Opp'n to Pl.'s Rule 56.2 Mot. for J. on the Agency R., ECF No. 31 ("Def.-Intervenor's Resp."); Pl.'s Reply in Supp. of its Rule 56.2 Mot. for J. on the Agency R., ECF No. 36 ("Pl.'s Reply Br.").[2] The court has jurisdiction pursuant to Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2012),[3] and 28 U.S.C. § 1581(c) (2012).

---

[1] "CD ___" refers to a document contained in the confidential administrative record.
[2] All citations to the agency record and the parties' briefs are to their confidential versions.
[3] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

I.     **Standard of Review**

The court sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). More specifically, when reviewing agency determinations, findings, or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole. Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006); see also Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951) ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight."). Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." DuPont Teijin Films USA v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966). Fundamentally, though, "substantial evidence" is best understood as a word formula connoting reasonableness review. 3 Charles H. Koch, Jr. Administrative Law and Practice § 9.24[1] (3d ed. 2018). Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances presented by the whole record." 8A West's Fed. Forms, National Courts § 3.6 (5th ed. 2017).

## II.　　Discussion

Durum is a Turkish pasta producer who sells "certain non-egg dry pasta in packages of five pounds (2.27 kilograms) or less" that is subject to Commerce's antidumping duty order covering certain pasta from Turkey. See Pl.'s Br. at 2 (citing Notice of Antidumping Duty Order and Amended Final Determinations of Sales at Less Than Fair Value: Certain Pasta from Turkey, 61 Fed. Reg. 38,545 (Dep't of Commerce July 24, 1996). In August 2015, Commerce accepted Durum's request for a new shipper review predicated on an October 16, 2014 sale of pasta from Durum to a U.S. importer (the "2014 sale"). Id. In the course of the administrative proceeding, Commerce placed on the record certain entry documents received in response to a U.S. Customs and Border Protection ("CBP") data query regarding a sale by Durum to a U.S.-based consignee[4] (the "non-POR sale")[5]. See Confidential Decision Memorandum at 2 (citing Memorandum from Fred Baker to the File, Re: U.S. Entry Documents – Certain Pasta from Turkey, (July 19, 2016) ("July 19th Memo")). Petitioners American Italian Pasta Company, New World Pasta Company, and Dakota Growers Pasta Company opposed Durum's request arguing that "Durum does not qualify for a new shipper review because CBP documents in the [July 19th Memo] show that" Durum had a non-POR sale. Id.

Commerce's regulations establish the procedures that govern new shipper reviews. Pursuant to these regulations, an exporter or producer seeking an NSR must include in its initial request documentation establishing, among other things, the date on

---

[4] Durum's U.S.-based consignee is [[　　　　　　　　　　]].
[5] Durum invoiced a sale of subject merchandise in November 2011, which entered the United States on [[　　　　　　]]. See Confidential Decision Memorandum at 2.

which subject merchandise of the exporter or producer making the request was first entered, or withdrawn from warehouse, for consumption, or, if the exporter or producer cannot establish the date of first entry, the date on which the exporter or producer first shipped the subject merchandise for export to the United States. 19 C.F.R. § 351.214(b)(2)(iv). New shippers must request a review within one year of the date of first entry or first shipment. 19 C.F.R. § 351.214(c).

Commerce rescinded Durum's NSR after finding that Durum had not filed its request within one year of its first United States sale. Specifically, Commerce found that: (1) Durum had invoiced a sale of subject merchandise to a U.S.-based consignee in November 2011; (2) Durum knew that, at minimum, this non-POR sale was destined for the United States; (3) Durum had reported the non-POR sale to the U.S. Government as a consumption entry; and (4) record evidence did not substantiate Durum's claim of an agreement with its U.S.-based consignee, that Durum's shipments, including the non-POR sale, would not enter U.S. customs territory. See Confidential Decision Memorandum at 8–10. Because Durum did not request an NSR within one year of the non-POR sale, Commerce determined that Durum had failed to comply with 19 C.F.R. § 351.214(b)(2)(iv)(A) and 19 C.F.R. § 351.214(c). Id.

Durum does not challenge Commerce's methodology, but instead argues that Commerce wrongly considered Durum as the exporter of the non-POR sale. Durum contends that because Durum did not know that the non-POR sale would enter U.S. customs territory, it was not the "price discriminator" under Commerce's "knowledge test" and thus was not the exporter of the non-POR sale under Commerce's regulations.

See Pl.'s Br. at 4–7. In addressing Durum's arguments, Commerce accepted that some form of the "knowledge test" could aid it in determining whether Durum was the exporter for the non-POR sale. See Confidential Decision Memorandum at 8. While Commerce traditionally uses the "knowledge test" to determine whether certain sales are attributable to a respondent for calculating that respondent's margins in antidumping duty proceedings, Commerce here looked to that test for guidance in evaluating Durum's claim that it was not the exporter of the non-POR sale for the purposes of 19 C.F.R. § 351.214(b)(2)(iv)(A) and 19 C.F.R. § 351.214(c). Id. at 8–9; see also Def.'s Resp. at 5–6. Commerce explained that under the "'knowledge test,' the basis for export price is the price at which the first party in the chain of distribution who has knowledge of the U.S. destination of the merchandise sells the subject merchandise, either directly to a U.S. purchaser or to an intermediary such as a trading company. The party making such a sale, with knowledge of the destination, is viewed as the [price discriminator and therefore the] appropriate party to be examined." Confidential Decision Memorandum at 4, 8.

As to Durum's knowledge of the ultimate destination of the non-POR sale, Durum relied heavily on the declaration of its Assistant General Manager Derya Akyel ("Akyel Declaration"). Commerce found that the Akyel Declaration failed to provide the support for Durum's purported lack of knowledge of the destination of that sale. Specifically, Commerce found that the declaration lacked (1) credibility in that Ms. Akyel did not appear to have been personally involved with the non-POR sale and her name did not appear on any of the sales documentation on the record for that sale, (2) contemporaneity in that the declaration was made several years after the non-POR sale, and (3) any

accompanying supporting documentation contemporaneous with or prior to the non-POR sale. See Confidential Decision Memorandum at 10.

    Before the court, Plaintiff challenges Commerce's determination that Durum had knowledge of the nature and ultimate destination of the non-POR sale (i.e., that the pasta shipment would enter U.S. customs territory). Pl.'s Br. at 18–25. Specifically, Durum contends that Commerce improperly discounted the Akyel Declaration, maintaining that the declaration is "the only record evidence that specifically addresses Durum's knowledge of where the sales were ultimately destined." Id. at 21. Contrary to Commerce's findings about Ms. Akyel's involvement in the non-POR sale, Durum contends that the record shows that her signature does appear on several of the non-POR sale documents, "albeit faint in some places." Id. at 21. Durum argues that given these signatures and the declarant's statement that she had "personal knowledge" of the non-POR sale, the Rescission determination must be remanded so that Commerce can reconsider the Akyel Declaration and attribute to it significant evidentiary weight. Id. at 22.

    The court disagrees. Commerce reasonably explained that it had concerns regarding the credibility and contemporaneity of the Akyel Declaration. See Confidential Decision Memorandum at 10. Commerce explained that "it is the Department's practice to attach more weight to documentary evidence than to statements such as declarations," and that Durum failed to provide contemporaneous documentary evidence that would support Ms. Akyel's assertions with respect to Durum's knowledge at the time of the non-POR sale. Id. (explaining that Commerce discounts post-hoc declarations in favor of contemporaneous documentary evidence because the latter is "more probative, reliable

and verifiable" (quoting <u>Grain-Oriented Electrical Steel From the Czech Republic: Final Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances</u>, 79 Fed. Reg. 58324 (Sept. 29, 2014))). Durum fails to establish how Commerce's stated practice of attaching "more weight to documentary evidence than to statements such as declarations" was unreasonable in light of the record. <u>Id.</u>

Moreover, despite Durum's contentions that the signatures on the documents in the July 19th Memo were "easily-readable," the record supports Commerce's finding to the contrary. Any appearance of Ms. Akyel's signature on those documents is "faint" and arguably illegible. <u>See</u> Confidential Joint Appendix, ECF No. 38, Tab 3, CD 144–47 (July 19th Memo). Durum has failed to demonstrate that the record leads to one and only one conclusion, namely that Ms. Akyel signed and was personally connected to the non-POR sale and its documentation. Accordingly, the court holds that Commerce's consideration of the Akyel Declaration and the entry documents in the July 19th Memo was reasonable.

Durum also contends that Commerce disregarded other information in the record indicating that the non-POR sale was intended for consumption on cruise ships via bonded transfer through a Foreign Trade Zone and that Durum did not know that its product would enter U.S. customs territory. Pl.'s Br. at 22–23. Specifically, Durum argues that Commerce overlooked "obvious" information in the record when it suggested that the destination port for the non-POR sale was either Port A or Port B.[6] <u>Id.</u> (citing <u>Confidential Decision Memorandum</u> at 9). Durum's claim is misplaced as not only was Commerce's

---

[6] Port A is [[                    ]], and Port B is [[                         ]].

reading of the record correct (i.e., at least one non-POR sale document did in fact indicate Port B, as a potential port of destination), but also, Commerce accepted Durum's argument that the port of destination was Port A and evaluated the record evidence in light of that fact. See Confidential Decision Memorandum at 9.

Commerce explained that it assigned significant evidentiary weight to the entry documents from CBP and as well as an FDA entry notice associated with the non-POR sale, and found that "Durum made a shipment of subject merchandise that entered the United States on [[                    ]], and that it knew the shipment was destined for a customer located in the United States." Id. at 10. The record additionally confirmed that the non-POR sale entered the United States as a consumption entry. Id.

Durum contends that Commerce failed to consider that portion of the record that fairly detracts from Commerce's finding that Durum knew the non-POR sale would enter U.S. customs territory. See Pl.'s Br. at 23–25. Specifically, Durum argues that its communications and pattern of sales with the parties involved in the non-POR sale support Durum's position that sales with these parties were intended to avoid U.S. customs territory by entering a Foreign Trade Zone ("FTZ") for subsequent loading onto cruise ships. Id. at 10, 23–25. Even though the non-POR sale was processed and entered as a consumption entry, Durum nevertheless suggests that the court should recognize the consumption entry as a "mistake" given that subsequent sales to the same parties did not appear in CBP data searches. Id. at 24. The court declines Durum's invitation. Durum's arguments all depend on documentation that Commerce found was not contemporaneous with the non-POR sale. In fact, all of Durum's documentation and

pattern of trade evidence post-dates the non-POR sale at issue. See Confidential Decision Memorandum at 9–10. While Durum may have speculated that the non-POR sale would not enter U.S. customs territory, Durum's proffered information fails to establish that Durum "had no knowledge that the [non-POR sale] would enter U.S. customs territory." Id.

Durum's position is weakened by a document from Durum's own evidentiary submissions that directly support Commerce's finding that Durum knew its non-POR sale would enter the U.S. as a "consumption entry." See Confidential Joint Appendix, ECF No. 38, Tab 6, Att. 2, CD 152–153 (Durum's administrative rebuttal brief and attachment of an FDA Prior Notice Entry Confirmation ("FDA Notice")). Specifically, Durum placed on the record an FDA Prior Notice Entry Confirmation, submitted to the FDA in connection with the non-POR sale, which directs the holder to "print this Web Entry Summary Confirmation and present it to U.S. Customs and Border Protection (CBP) or the Food and Drug Administration (FDA) at the Port of Arrival." Id. The FDA Notice identifies the "Submitter" as Durum and identifies the "Entry Type" as "Consumption." Id. Accordingly, the record provides support for Commerce's conclusion that Durum knew the non-POR sale would enter U.S. customs territory because Durum affirmatively represented to the U.S. Government that the non-POR sale was a consumption entry. See Confidential Decision Memorandum at 9 & n.27 (citing the FDA Notice and determining that "record facts support a conclusion that Durum had knowledge of the U.S. destination of its [non-

POR] sale and being the appropriate party to be examined in this NSR").[7]

Durum next contends that the Government in its response brief improperly relies on the FDA Notice, arguing that the Government is attempting to use the FDA Notice in a post-hoc fashion to indicate Durum's state of mind, despite Commerce only having cited the FDA Notice for the purpose of establishing that the non-POR sale entered the United States as a "consumption entry." Pl.'s Reply at 6–7. Durum's argument fails as the court concludes that Commerce's reliance on the FDA Notice as state of mind evidence is reasonable based on the fact that the FDA Notice was cited in the Confidential Decision Memorandum as providing facts that "support a conclusion that Durum had knowledge of the U.S. destination of its [non-POR] sale and being the appropriate party to be examined in this NSR." Confidential Decision Memorandum at 9; see also NMB Singapore Ltd. v. United States, 557 F.3d 1316, 1321–22 (Fed. Cir. 2009) (The court must sustain a determination "of less than ideal clarity" where Commerce's decisional path is reasonably discernable. (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, (1974))).

Perhaps recognizing the weakness of its argument before the court that Defendant's reliance on the FDA Notice constitutes an impermissible post-hoc rationalization, Durum argues in the alternative that the information in the FDA Notice

---

[7] Durum's counsel suggested at oral argument that there was no evidence that Durum ever actually submitted this FDA Notice to the Government. See Oral Argument at 27:20–29:22, ECF No. 45 (Apr. 5, 2018). This argument fails given that the totality of the document indicates on its face that it was submitted to the FDA in December 2011, lists Durum as the "Submitter," and identifies the entry type as "Consumption." See FDA Notice; Oral Arg. at 36:55–38:00.

only indicates the knowledge of its agent[8], who transmitted the information in the FDA Notice to the FDA on behalf of Durum. Pl.'s Reply at 7–8. Durum highlights that in a handwritten form submitted by Durum to its agent, Durum did not provide any information describing the entry type for the non-POR sale. Id. Durum maintains that because its agent transmitted the information in the FDA Notice to the FDA, and there is no evidence that Durum represented to its agent that the entry should be listed as a "consumption entry," any attempt by Commerce to infer that Durum knew that the non-POR sale would enter the U.S. as a "consumption entry" cannot amount to more than "speculation." Id. Durum's argument, however, ignores the well-settled rule that an agent's knowledge, acquired within the scope of its agency, is imputed to the principal. See, e.g., Long Island Savings Bank, FSB v. United States, 503 F.3d 1234, 1249 (Fed. Cir. 2007); United States v. Greenlight Organic, Inc., No. 17-00031, 41 CIT ___, ___, 2017 WL 6504002, at *2 (Dec. 18, 2017) (discussing agency and knowledge issues with respect to agents of a corporation); State of New York v. United States Parcel Service, 253 F. Supp. 3d 583, 669 (S.D.N.Y. 2017) (describing agency law generally and the imputation of knowledge from an agent to his or her employing principal). Accordingly, Commerce reasonably relied on the FDA Notice when it found that Durum knew that the non-POR sale would enter the U.S. as a consumption entry.

Durum asserts that despite the information in the CBP entry documents and the FDA Notice supporting Commerce's knowledge finding, Commerce nevertheless lacked adequate record information to support a finding that Durum knew of the destination of

---

[8] Durum's agent is [[              ]].

the non-POR sale under the "knowledge test." See Pl.'s Br. at 19–22. In particular, Durum relies on Hiep Thanh Seafood Joint Stock Co. v. United States, 35 CIT ___, 781 F. Supp. 2d 1366 (2011) ("Hiep Thanh II"), for the proposition that Commerce's "knowledge test" demands more than circumstantial evidence for a finding of knowledge. Pl.'s Br. at 19. Plaintiff's reliance on Hiep Thanh II is misplaced, as Plaintiff ignores key factual distinctions between the decision in Hiep Thanh II and this case.

In Hiep Thanh II, the court was not presented with an untimely request for a new shipper review. Rather, in that case, Commerce analyzed whether certain sales should have been included in the respondent's margin calculation as part of the respondent's U.S. sales database. Hiep Thanh II, 35 CIT at ___, 781 F. Supp. 2d at 1369. In considering Commerce's analysis, the court concluded that Commerce failed to consider all of the record evidence when evaluating whether the respondent had knowledge of the destination of those sales. Id. at ___, 781 F. Supp. 2d at 1372–73.

In this matter, unlike in Hiep Thanh II, Durum knew that its customer was a U.S. company. See Confidential Decision Memorandum at 9–10. Furthermore, in Hiep Thanh II, commercial invoices and packing lists on that record "name[d] the Mexican customer and specif[ied] the ultimate destination of the product as 'Mexico via [a port within the United States].'" Hiep Thanh II, 35 CIT at ___, 781 F. Supp. 2d at 1370. Here, the circumstances are different. Durum's commercial invoices, bills of lading, packing lists, and other associated documents for the non-POR sale indicated delivery to the U.S.-based consignee at Port A, with no further indication regarding the ultimate destination of the shipment. An additional distinction is Durum's own representation, to the FDA, that

the non-POR sale would arrive at Port Everglades and be a consumption entry. See FDA Notice. Furthermore, unlike Hiep Thanh II, Commerce considered all of the record evidence and reasonably concluded that: (1) contemporaneous documentary evidence, such as Durum's statement to the FDA, supported a finding that Durum knew the non-POR sale would enter the United States as a consumption entry; and (2) the record evidence did not support Durum's claim that it expected the merchandise to never "technically" enter U.S. customs territory.

Finally, Durum's reliance on Hiep Thanh II ignores the subsequent history of that case in which the court sustained Commerce's determination, noting that the respondent had "shipped merchandise covered by an antidumping duty order to a U.S. port … without any qualification or limitation against U.S. entry." See Hiep Thanh Seafood Joint Stock v. United States, 36 CIT ___, ___, 821 F. Supp. 2d 1335, 1340 (2012) ("Hiep Thanh III"). Here, as in Hiep Thanh III, Durum failed to establish on the record that the non-POR sale was never intended to enter U.S. customs territory. Moreover, Commerce's determination in this matter, as in Hiep Thanh III, reflects a simple but clear policy objective to discourage respondents who deliver subject merchandise directly to the United States from bypassing Commerce's regulatory limitations on obtaining a new shipper review by pleading ignorance of previous consumption entries. Cf. Hiep Thanh III, 36 CIT at ___, 821 F. Supp. 2d at 1341.

Ultimately, the court observes that Durum's position—that it understood the non-POR sale would travel through an FTZ before delivery to cruise ships technically outside of U.S. customs territory—is one reasonable conclusion that could be drawn from this

record. However, for Durum to prevail the record must lead a reasonable mind to draw one and only one conclusion: Durum had no knowledge that the non-POR sale would enter U.S. customs territory. That conclusion, in turn, depends upon inferences to be drawn from the available record evidence—inferences that must compete with direct record evidence and other inferences (having perhaps an equal or better claim) that Durum knew at the time of the non-POR sale that the sale would enter the U.S. as a consumption entry. See, e.g., Hiep Thanh III, 36 CIT at ___, 821 F. Supp. 2d at 1340; see also Tianjin Wanhua Co. v. United States, 41 CIT ___, ___, 253 F. Supp. 3d 1318, 1328 (2017) (emphasizing that claimants challenging Commerce's determinations must demonstrate that their position is the "one and only reasonable" option on the record); Mitsubishi Heavy Indus. Ltd. v. United States, 275 F.3d 1056, 1062 (Fed. Cir. 2001) ("'[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" (quoting Consolidated Edison, Co. v. NLRB, 305 U.S. 197, 229 (1938))). Here, Commerce reasonably concluded that the CBP entry documents, together with the FDA Notice, supported the finding that Durum made the non-POR sale with knowledge that the sale would enter U.S. customs territory, despite the Akyel Declaration and Durum's other evidence supporting a contrary conclusion. See Confidential Decision Memorandum at 9–10. Accordingly, the court sustains the Rescission.

### III. Conclusion

Based on the foregoing, the court sustains Commerce's <u>Rescission</u>. Judgment will enter accordingly.

<u>  /s/ Leo M. Gordon  </u>  
Judge Leo M. Gordon

Dated: April 24, 2018  
       New York, New York